The next case is number 22-1763, United States v. Francis Cahill. At this time, would Attorney Cooper Stein please introduce himself on the record to begin? Theodore Cooper Stein, appearing for the appellant. Francis Bob Cahill. May it please the Court, and if I may, I'd like to ask to reserve three minutes for rebuttal. Your Honors, the sentence below was excessive and substantively unreasonable, and that is because it failed to meet the standard of showing a plausible rationale with a defensible result. The sentence was so excessive, that it was so excessive, is demonstrated on the record by the fact that there were three alternative lesser sentences offered by the parties and available to the judge, but the sentencing judge failed to articulate precise, specific, and compelling or supporting articulatable factors to justify such an extreme upward variance in the sentence. There were three opportunities here, initially with the guidelines calculation, which both parties agreed on the record was a procedurally correct calculation, notwithstanding the fact that Mr. Cahill did have hanging over his head a permanent cloud, if you will, in that he was under a 99-year remaining sentence of probation, which was guaranteeing he would never be category history, history category one, but would only be category three, because he was always under that judicial sentence. But rather than stay within the guidelines and the heartland, if you will, of a 31 to 37-month sentence, the court went further. The government requested to double that by moving all the way to category six on the guidelines chart and to actually go up to 60 months, professing that the history was underrepresented. But that wasn't sufficient for a plausible basis for the court, sentencing court, to stop. Counsel, if I may, I don't understand your argument. There are two variations here. One is that the district court did not articulate a justification for the sentence which was imposed. And the other is, well, regardless of what the district court said, it's just substantively unreasonable. Okay, so which are you arguing and what are our standards of review as to each of those arguments? Well, Your Honor, we're arguing that it's substantively unreasonable because we recognize that there is some leeway. Is that argument one or argument two? Because earlier you said she didn't sufficiently justify the sentence. Well, I mentioned the failure to justify as our argument to support why it does not meet the standard. Okay, it's not an independent sentence. Okay, so if I'm independent reason, it's just in furtherance of your argument. Okay, substantive unreasonableness. You seem to be arguing that if the parties suggest to the court a lower sentence, that in and of itself makes the sentence substantively unreasonable. What is your argument? No, our argument is that the sentencing court went literally off the chart beyond the rightmost column of the guidelines without putting on the record anything new, distinctive, or articulable to justify going so far beyond the party's recommendations. What about the severity and depth of the criminal history? Isn't that what the district court's referring to? Well, we start out with that presumably covered by the guidelines in terms of general history, and then to the extent that the government – I'm sorry. Why did we start with the presumption that the seriousness and depth of the criminal history is covered by the guidelines? Well, most of it was 30 years old. And some of it was not. Well, actually all the scoring sentences, the actual true violent crimes or anything of that nature, were 1992 or sooner. Everything since then was not adjudicated or not even filed, but just arrest reports that did not lead to convictions or sentences. And we cited this court's opinion in Morero-Perez on page 22 of our brief to demonstrate that that is not a sufficient basis. In fact, I believe the court said it is both error and obviously so to allow that to weigh in and factor in. But I thought here there was admitted to conduct in the PSR, not objected to. Well, the statements as factual history are in the PSR, but the fact that the sentencing court placed so much weight on them, which we argue is contrary to this court's precedent, that it should not be permitted to be so. It's not a sufficient basis or articulable. It's nothing unique to show why he would go so far out of the guidelines to impose such an excessive sentence on a 74-year-old man with failing health who actually had not been convicted since 1992. When does he release? I believe the release date was around 2000. Actually, I should be in the PSR. And... I'm afraid I can't quite find it at this moment as my time is ticking. If the court would like, I can submit a follow-up letter. But I guess what I'm really just trying to... I don't know that the 92 date is all that probative. ...that he's in prison for a long period of time, that after coming out continues the pattern of criminal conduct, which seems to be the view of the district court. Well, our point is that all the criminal conduct after that, aside from escaping from a work detail, which is basically walking off and then returning, there's nothing really adjudicated or actually sentenced that that would be... And what about the... wasn't there a crowbar incident? That is an interesting case, Your Honor, because that was... much was made of that when, in fact, there was never even a complaint filed. And that's why we would argue that there really is not a sufficient or proper basis for varying so extremely. It's described in the PSR, correct? I'm sorry? That incident is described in the PSR. It is described in the PSR, but it's essentially a nature of hearsay. It was something... It's not objected to by your client, correct, the description? Well, to the extent that it was stated, yes. I don't understand that statement. The factual history of that it did occur was not object... that was agreed to, that, yes, that was a correct statement of the history of the defendant. And if that incident as described in the PSR and unobjected to, that the district court can't wait to, right? It also mentions the defendant's disavowal or dispute over certain aspects of the report. You have three minutes on rebuttal. You can address this on rebuttal. That's fine. It's paragraph 45 of the PSR, which is page 15 of the supplemental appendix, Your Honor, where it says no complaint was filed. And the account, the defendant was arrested based on information. But I believe that he had contested certain aspects of the description. But the fact that the incident occurred and that there was an altercation was admitted and that was not objected to. But there was no penalty. There was never even a complaint filed. So we don't feel that that should be held against him, if you will, in varying upward. Any further questions? No. Thank you. Thank you, counsel. At this time, would Attorney Kleinbord please introduce himself on the record to begin? Good morning. May it please the Court, Brian Kleinbord on behalf of the United States. Your Honors, I'll begin with the argument about substantive reasonableness, which is where opposing counsel focused his argument. Obviously, the government's position is that this is a preserved challenge to substantive reasonableness because Mr. Cahill's counsel did ask for a sentence within the guidelines, which is sufficient to preserve the challenge. Nevertheless, this Court reviews that preserved challenge under the deferential abuse of discretion standard. Mr. Cahill was incarcerated from 1992 to 2010. So that's 18 years of his adult life he was spent incarcerated on his first felon and conviction charge. So he ought not get credit for not committing crimes since he was incarcerated for a major portion of his adult life. The District Court had several reasons why it imposed an upward variant sentence in this case, and the Court's sentence is amply supported by the record. First, the Court found that Mr. Cahill's criminal history was unrelenting from a number of convictions that occurred that were not scored on the guidelines calculation from the late 60s and early 70s, leading up to the murder conviction in Texas in 1978, which obviously was scored on the guidelines calculation. That was a murder that was committed with a firearm, and then following Mr. Cahill's release from that, he was charged with a parole violation. He eventually made it to New England after some years and was convicted of his first felon in possession conviction in 1992, where he was found to have multiple firearms in his possession and was given the lengthy sentence that we've discussed for that first felon in possession conviction. So Judge Walker found, again, that his criminal history was significantly underrepresented in the guidelines, that he's exactly the type of person, because it's his second felon in possession conviction, where he has a prior murder conviction with a firearm, he's exactly the type of person for whom the felon in possession... When was he released from the 92 conviction? 2010, Your Honor. And then following that, what's the history? Following that, he has the 2020 aggravated assault with a crowbar that Your Honor asked opposing counsel about, which did not result in a conviction, but again, was not objected to in the PSR. We don't know exactly what time he got to. We know that he absconded from parole in Texas, and the Texas authorities were looking for him and asked the Maine State Police, once they determined that he was living in Maine, asked the Maine State Police for assistance in locating him in Maine, and that's what led to the current charges. In terms of convictions, I don't believe there's much after the 2010 conviction, but... Absconded from parole when? He has two escape or violation... He has a violation of parole from Vermont, which is, I believe, a warrant is still outstanding for that, and he has a prior escape conviction from way back in his earlier history that was in Portland, Vermont in 1970, but even if we put aside... You haven't answered my question. I'm still just following up on Chief Judge Barron's question about post-2010 conduct. Right. The PSR... Most of the convictions... Again, we have the 2020 assault. Most of the convictions in the PSR... Excuse me, I do want to correct something. There was a parole violation filed in 2018, which goes back to the murder conviction in Texas, and that warrant, according to the PSR, is still active. That's for a parole violation in August of 2018. Vermont or Texas? Texas, Your Honor. The Crowbar incident, Your Honor, the incident occurred on May 15, 2020. And when does the conviction that we're now... So again, Judge Walker found that for someone who had a murder conviction involving a firearm, a prior felon in possession conviction that obviously didn't deter him from reacquiring firearms that he knew he was not supposed to be in possession of, that both his criminal history and the prospect of a felony to the community were factors that were paramount in imposing the sentence in this case, and that justified a sentence that was above the guidelines. And I would just note that, as the government cited in its brief, there are a number of cases, including a First Circuit case, in which this court has upheld variant sentences for felon in possession convictions, where the court has imposed a sentence above the guidelines, and those are cited in the government's brief. This sentence of six years is considerably less than the sentence that Mr. Cahill received on his first felon in possession conviction. And again, that served not to be sufficient to deter him from acquiring firearms. Can I ask just one... I think I have this right. There's a departure when the criminal history doesn't adequately capture the situation, and that's 60 months. Yes. I don't know that this argument is precisely made to us, but does the government have a view about when you can go beyond that departure in a variance based on the criminal history being not adequately reflected? Because it would seem there's a little bit of a risk of kind of a double counting. Diamonds contemplate criminal history not fully capturing it, therefore there's a departure of 60 months. I then now go to 72 months. Presumably there needs to be some explanation of what it is about the criminal history that's different than the kind that bumps you into the departure zone. So, yes, Your Honor, my understanding is that what... Well, Judge Walker was very clear, I think, in this case, that the sentence he was imposing was an upward variant sentence and not an upward departure. But the concept is that if the guidelines already account for something, justifying the variance is problematic. So the variance has to be explained by something not already accounted for in the guidelines. And when there's a departure based on criminal history not being adequately reflected, it can't be that the explanation of the variance is, well, the criminal history wasn't adequately reflected if it was above the departure. So it's really that. What is the quantum that takes you beyond just what the departure justifies? I think I understand the Court's question, and I think what Judge Walker did here was... His remarks at sentencing are clear that it's not just the underrepresentation of Mr. Cahill's criminal history. It's the risk of recidivism. It's the fact that he has a second felon in possession conviction. It's the fact that he committed, again, committed a prior murder with a firearm and seems to be doing whatever he can whenever he's out to accumulate firearms that he's not entitled to possess and that pose a great risk to public safety. And I think it's those factors that motivated his upwardly variant sentence and that are justified by the record. Counsel, can I just ask one follow-up question on that? If there was an upward departure justified based on the failure to adequately reflect criminal history, is there a cap on that upward departure in the guidelines? I believe so. I'm not certain. I didn't really look into that. But I know that there are a whole set of different notice procedures that need to be met to make sure that the criminal history is justified if the court is going to impose an upward departure versus an upward variant sentence. And I see that my time is out, unless the court has any further questions. I do have one additional. So when we are analyzing substantive reasonableness, the second part of that is a plausible rationale. But we're not doing a procedural reasonableness inquiry. We're doing a substantive reasonableness inquiry. And so if the court's conclusion is justified in the record but not expressly stated by the judge in every detail that we might expect for a procedural reasonableness challenge, what's our law on that? How far are we allowed to go into the record beyond what the judge stated when we're doing just a substantive reasonableness analysis? Your Honor, I would say that the court's review is abuse of discretion on substantive reasonableness. I think the court has to determine whether the court adequately explained, even for substantive reasonableness, its application of the 3553A factors and that there's arrived at a fair result. And so I think that the court more than adequately explained its rationale with respect to the 3553A factors. And I don't think that under an abuse of discretion standard, the court has to do a searching review and that on this record, the court should find no abuse of discretion. Have we held clearly that it is abuse of discretion not to know both? I've cited cases in my Bruno Campos from 2020, at least if I've cited it correctly in my brief, is a case that says the court reviews the reasonableness of a sentence under the abuse of discretion standard. Thank you. Thank you, counsel. At this time, if counsel for the appellant will reintroduce himself on the record to begin his three-minute rebuttal. Thank you, Theodore Cooperstein, for the appellant, Bob Cahill. I'd like to begin by addressing one or two questions that Judge Howard just asked my opponent. The guidelines, of course, are advisory and there is no formal upper limit but for the statutory maximum. But we submit to the court that it still must be articulably supported and justified on the record. Otherwise, we are just dealing with arbitrariness. Not, is there a cap on the variance? Under the guidelines, when you depart because of criminal history, does the guidelines establish a cap on how high that departure can go? Because there's so much discretion in a sentence in court under the statutory regime, my understanding is really only our limit is the statutory maximum. No, but I'm just saying under the guidelines, does it contemplate how big a departure under the guidelines can be made? It doesn't mean you couldn't vary from them since they're just advisory. I'm not aware of a specific provision, Your Honor. I think it's somewhat understood or implied that a sentencing court would try to stick within the guidelines or, say, shifting over a few columns or something of that sort. But the main point here is that it has to be justified. There has to be something on the record for this court and the public to see as to why it varied so wildly, why it was outside of the heartland of usual cases. What merited this particular defendant getting such an extremely varied divergent sentence? And in this case, I'll follow up, I believe, on your question, Chief Judge Barron. It's in the Supplemental Appendix, page 3 and paragraph 4 of the PSR that specifies a September 2010 release date from that federal conviction in Vermont in 1992. So when he was released in 2010, he had no, and I repeat, no convictions, felony, or misdemeanors at all for the 12 years until the present offense was charged. The only item in his history was that encounter with Mr. Grafton that was given so much undue emphasis by the sentencing court. But again, as I note in the PSR, it states... And there was a parole violation or not? He is currently under a charge of violation of supervisory release from that Vermont conviction. And that's a matter of the interaction of the Texas state 99-year parole sentence that he has. When he completed that 2010 release, he was returned to Texas to deal with the state parole. And then when he returned to New England, he was released on parole. And the reason he was released in New England following his sentence in Texas is ultimately because he failed to let someone in Texas know that he was returning to New England. That's what prompted the search that led to his arrest. But didn't he also, but counsel, didn't he, it's not just that he didn't notify someone in Texas, he started using different names, correct? I don't know that he was charged for anything like that. I thought the PSR was clear that he started using pseudonyms, which would, of course, make him harder to track. Actually, when he was found in 2022 in Maine, he was using his proper name of Francis Bob Cahill. And they said they found him by finding his driver's license and a hunting permit in those names. Okay, thank you. That's helpful. Thank you. If I may, Your Honor, I'll finish up by stating that there was some foreign and hyperbolic language used by the sentencing judge in determining the upward variance, but it was nothing specific. He inverted to the misspent youth and the crimes of the 60s and 70s, but following the homicide in 1978, which Bob Cahill still maintains was a mishap, and there is a parallel state collateral proceeding. In the works right now, because subsequently, they didn't know it at the time, they subsequently determined that Smith & Wesson rifle, and I note that the appellee brief called it a handgun, but it was a rifle in a hunting incident, actually has been shown to have a number of faults and misfires. So there was no objection to the PSR by the defense with regard to the report of that encounter with Mr. Grafton. That's because there were zero points to it. It was just a factual recitation of the occurrence. It was never charged, no complaint filed. So really, what was there to object to? Because the defense counsel could not have predicted that the sentencing judge was actually going to weigh it so improperly in violation of the First Circuit precedent. Also, I would like to correct the... I am referring to the Morero Perez. All right, you've made that argument. That's your case. Yes, Your Honor, in that the uncharged, unconvicted arrests by themselves should not be given undue weight or formed the basis of a variance or a sentence. Counsel, I think we have to bring you over your time, but if you want to just finish with 20 seconds, you can. Yes, thank you, Your Honor. There is nothing in the record to show that Mr. Cahill actually reacquired firearms. He never actually possessed them. And that gives me a point to... We still rest on our first argument regarding the insufficiency of the guilty plea, but we rely on our briefs for that. I don't want that to be considered waived. But also, it's not in the record that he accumulated or acquired firearms. They were just present in the house. Thank you.